UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:

| | |
|---|---|
| UNITED STATES,<br><br>Plaintiff,<br><br>v.<br><br>XIN MIAN PAN AND UNI-TILE & MARBLE, INC.,<br><br>Defendants. | Court No. 26-04188 |

**COMPLAINT AND DEMAND FOR JURY**

The United States brings this action against defendants Xin Mian Pan (Mr. Pan) and Uni-Tile & Marble, Inc. (Uni-Tile), jointly and severally, and alleges the following:

**INTRODUCTION**

1. The United States brings this action pursuant to 19 U.S.C. § 1592 to recover unpaid customs duties and a monetary civil penalty from Mr. Pan, and his company Uni-Tile, relating to approximately 503 entries consisting of wooden cabinets and vanities (WCV), quartz surface products (QSP), ceramic tiles, and other merchandise which were imported from the People's Republic of China (China) during the period between approximately September 22, 2018 and August 28, 2023. *See* Exhibit A. Mr. Pan and Uni-Tile violated 19 U.S.C. § 1592(a) by knowingly (i.e., fraudulently) entering the merchandise by means of false statements and omissions that were material, and/or fraudulently aiding and abetting violations committed by others, which prevented U.S. Customs and Border Protection (CBP) from collecting the proper amount of duty owed on the imported merchandise.

2. As discussed in more detail below, Mr. Pan and Uni-Tile devised, jointly, a complex fraud scheme, utilizing transshipment, undervaluation, misdescription, phony shell companies, and other means of evasion, to avoid paying the combination rate of antidumping duties (AD) and countervailing duties (CVD) and other customs duties, including duties pursuant to Section 301 of the Trade Act, 19 U.S.C. 2411, *et seq.*, on Uni-Tile's imports of Chinese merchandise. Initially, this scheme involved transshipping Chinese merchandise through Malaysia (which was falsely identified as the country of origin of the merchandise), undervaluing the merchandise, and/or misdescribing the merchandise – all to avoid payment of AD/CVD on Chinese merchandise for which Uni-Tile was the importer of record. Then in March 2022, CBP initiated a formal Enforce and Protect Act (EAPA) investigation of Uni-Tile's entries of transshipped merchandise. Thereafter, defendants ceased using Uni-Tile as an importer of record and began using phony shell companies as importers of record so that defendants could continue to evade lawful duties on imports of Chinse merchandise while disguising their own involvement in the fraud. The phony shell companies, used as importers of record, continued to transship and undervalue the imported merchandise, and often falsely described imported QSP as being some other product that was not subject to AD/CVD.

3. The materially false statements and omissions that defendants knowingly made, caused to be made, and/or knowingly aided and abetted, caused the United States to be deprived of "lawful duties, taxes, or fees" including $68,292,260.09 in actual loss of revenue that the United States has been deprived.[1]

[1] There is also a potential loss of revenue that the United States has been deprived of, which is equal to $37,915,480.64, the majority of which remains unpaid. CBP sent out supplemental duty bills for most of the potential loss of revenue.

4. As a result of their actions in connection with their fraudulent importing activities, the United States Attorney's Office for the Northern District of California has brought criminal charges against Mr. Pan, Uni-Tile, and several other parties involved in Uni-Tile's fraud scheme. *See United States v. Xin Mian Pan, et al.*, Cr. No. 25-0428 (CRB) (N.D. Cal.). That matter is pending. Separately, CBP issued penalty notices and duty demands that Mr. Pan and Uni-Tile have refused to pay.

5. As a result of their violations of 19 U.S.C. § 1592(a), this Court should enter judgment against Mr. Pan and Uni-Tile, jointly and severally, for the actual loss of revenue from unpaid lawful duties, taxes, or fees, under 19 U.S.C. § 1592(d) in the amount of $67,922,260.09[2] and a fraud penalty for $222,537,664.95[3], plus pre-judgment and post-judgment interest. The United States also seeks actual loss of revenue and penalties, plus pre-judgment and post-judgment interest for defendants' grossly negligent or negligent violations of 19 U.S.C. §1592(a), in the alternative.

**JURISDICTION**

6. This Court possesses exclusive jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1582.

**DEFENDANTS AND RELATED PARTIES**

7. At all times relevant to the matters described in this complaint, defendant Mr. Pan was a resident of California and owned, operated and/or controlled several companies located in

---

[2] The total unpaid duties sought in this case equals the actual loss of revenue minus $370,000.00 in bonds paid by the sureties in this matter.

[3] A penalty related to violations arising out of fraud must not exceed the domestic value of the merchandise, which is $222,537,664.95. *See* 19 U.S.C. § 1592(c).

California, including Uni-Tile, Uni-Stone & Cabinet, Inc. (Uni-Stone), and Uni-Marble and Granite, Inc (Uni-Marble).

8. At all relevant times, defendant Uni-Tile was incorporated in California and had three associated business locations in California: Uni-Tile, located in Hayward; Uni-Stone, in San Francisco; and Uni-Marble, in San Jose. At all relevant times, Uni-Tile was an importer and retailer of kitchen and bath construction and remodeling products including WCV, QSP, and ceramic tiles. At all relevant times, Mr. Pan was Uni-Tile's chief executive officer (CEO) and chief financial officer (CFO) and controlled Uni-Tile's daily operations.

9. At all relevant times, Hua Liang Xie (Mr. Xie) was a resident of California and the owner of Oriox Customs Broker Co. (Oriox). Xie served as the primary licensed customs broker for Mr. Pan and Uni-Tile.

**THE TARIFF SYSTEM**

10. Companies and individuals that import merchandise into the United States normally pay customs duties on that merchandise. The duty rate applied to the merchandise is determined by the category to which that merchandise is assigned under the Harmonized Tariff Schedule of the United States (HTSUS).

11. Pursuant to 19 U.S.C. § 1484, an importer of record is required to submit a customs "entry," which requires among other things, a description of the merchandise and its HTSUS number that is bound for import. To submit an entry, the importer of record must file certain information with CBP, which is then used by CBP to assess duties, collect statistics, and determine whether other requirements of law have been met. Documents required for entry include bills of lading and commercial invoices, among other records.

12. To complete entry, an importer of record must also submit to CBP the correct valuation of merchandise in accordance with 19 U.S.C. § 1401a. *See* 19 C.F.R. §§ 141.86, 152.101, and 152.103. The importer must also identify the country of origin and mark imported articles with the country of origin. *See* CBP Form 7501; 19 U.S.C. § 1304; 19 C.F.R. § 134.11. If the imported merchandise is subject to an AD/CVD order, the importer of record must also declare in entry documentation the unique identifying number for those orders assigned by the United States Department of Commerce (Commerce). *See* 19 C.F.R. § 141.61(c) (requiring that the entry summary filed for merchandise subject to an AD or CVD order must include the unique identifying number assigned by Commerce). The same is true when merchandise is subject to Section 301 duties.[4]

13. Because the entry documents are used to assess duties, importers of record are required to declare under oath, and for each entry, that "all other statements in the invoice or other documents filed with the entry, or the entry itself, are true and correct." 19 U.S.C. § 1485(a)(3).

14. Importers also have a duty to exercise "reasonable care" when entering merchandise into the United States, including "taking measures that will lead to and assure the preparation of accurate documentation[.]" 19 C.F.R. § 171, Appendix B(D)(6).

[4] Section 301 duties in this complaint refer to additional duties that were finalized beginning on or about July 6, 2018, upon the recommendation of the U.S. Trade Representative to impose an additional 25% valorem duty on certain products entered under specific HTSUS subheadings. *See Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 14906 (USTR Apr. 6, 2018). At this time, the additional duties imposed by Section 301 apply to certain articles that are products of China.

15. Typically, a customs broker may submit an importer's entry documents on behalf of the importer, pursuant to a power of attorney.

**AD/CVD Orders**

16. Commerce has the authority to impose AD/CVD orders. AD orders provide relief to domestic industries that have been or are threatened with material injury caused by imported goods sold in the United States at prices shown to be less than fair market value. CVD orders give similar relief to domestic industries that have been or are threatened with material injury caused by imported goods found to have received significant foreign government subsidies and which could therefore be sold at lower prices than similar goods produced in the United States. When imposed together on certain merchandise, AD/CVD rates are described as a "combination rate."

**I. Ceramic Tiles**

17. On September 12, 2019, Commerce published an affirmative preliminary determination that countervailable subsidies are being provided to ceramic tiles from China. *See Preliminary Affirmative Countervailing Duty Determination, Preliminary Negative Critical Circumstances Determination, and Alignment of Final Determination with Final Antidumping Duty Determination*, 84 Fed. Reg. 48125 (Dep't of Commerce Sept. 12, 2019).

18. On November 14, 2019, the Commerce Department published its affirmative preliminary determination that ceramic tiles from China are also likely to be sold in the United States at less than fair value. *Ceramic Tile From the People's Republic of China: Preliminary Affirmative Determination of Sales at Less than Fair Value, Preliminary Negative Critical Circumstances Determination, and Postponement of Final Determination*, 84 Fed. Reg. 618877 (Dep't of Commerce Nov. 14, 2019).

19. On June 1, 2020, the United States imposed AD/CVD on ceramic tiles manufactured in China (AD/CVD orders for ceramic tiles). *See* 85 Fed. Reg. at 33089; 85 Fed. Reg. at 33119. The combination rate for ceramic tiles imported from China was 689.50 percent. *Id.*

20. With respect to the AD order for ceramic tiles, Commerce required that CBP suspend liquidation of entries of subject merchandise entered for consumption after May 28, 2020, and collect a cash deposit rate of 330.69% for all entries within the scope the AD Order – Ceramics falling with the China-wide entity rate. Prior to that time, from November 21, 2019, to May 12, 2020, the cash deposit rate was 330.69% and from May 12, 2020, to May 28, 2020, the cash deposit rate was 0%, which was the gap period.

21. With respect to the CVD order for ceramic tiles, Commerce required CBP to suspend liquidation of all entries of subject merchandise entered for consumption on or after May 28, 2020, and to collect a cash deposit rate of 358.81% for all entries within the scope of the CVD Order – Ceramics falling within the "all-others" rate. Prior to that time, from September 12, 2019, to January 9, 2020, the cash deposit rate was 103.77% for the all-others rate and from January 10, 2020, to May 28, 2020, the cash deposit rate was 0%, which was the gap period.

## II. Wooden Cabinets and Vanities

22. On October 9, 2019, Commerce published an affirmative preliminary determination that countervailable subsidies are being provided to WCV from China. *See Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination and Extension of Provisional Measures*, 84 Fed. Reg. 54106 (Dep't of Commerce Oct. 9, 2019).

23. On August 12, 2019, Commerce published its affirmative preliminary determination that WCV from China are also likely to be sold in the United States at less than fair value. *See Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Preliminary Affirmative Countervailing Duty Determination, and Alignment of Final Determination with Final Antidumping Duty Determination*, 84 Fed. Reg. 39798 (Dep't of Commerce Aug. 12, 2019).

24. On April 21, 2020, the United States imposed AD/CVD on WCV manufactured in China (AD/CVD orders for WCV). *See* 85 Fed. Reg. 22126; 85 Fed. Reg. 22134. The combination rate for WCV imported from China was 272.57 percent.

25. With respect to the CVD order for WCV, Commerce required that CBP suspend liquidation of entries of subject merchandise entered for consumption after April 17, 2020, and collect a cash deposit rate of 20.93% for all entries within the scope of the CVD Order – Cabinets falling with the China-wide entry rate. Prior to the CVD Order being entered, for entries under the "all others" rate from August 12, 2019, to December 9, 2019, the cash deposit rate was 16.41% and from December 10, 2019, to April 16, 2020, the cash deposit rate was 0%, which was the gap period.

26. With respect to the AD order for WCV, the Commerce Department required CBP to suspend liquidation of all entries of subject merchandise entered for consumption on or after April 17, 2020, and to collect a cash deposit rate of 251.64% for all entries within the scope of the AD Order – Cabinets falling within the "all-others" rate. Prior to the AD Order, for cabinets being entered for entries under the "all-others" rate from October 9, 2019, to February 27, 2020, the cash deposit rate was 251.64%; from February 28, 2020, to April 5, 2020, the cash deposit

rate was 251.64%; and from April 6, 2020 to April 16, 2020 the cash deposit rate was 0%, which was the gap period.

**III. Quartz Surface Products**

27. On September 21, 2018, Commerce published an affirmative preliminary determination that countervailable subsidies are being provided to QSP from China. *See Certain Quartz Surface Products from the People's Republic of China: Preliminary Affirmative Countervailing Duty Determination and Alignment of Final Determination with the Final Antidumping Determination*, 83 Fed. Reg. 47881 (Dep't of Commerce Sep. 21, 2018).

28. On November 20, 2018, Commerce published its affirmative preliminary determination that QSP from China are also likely to be sold in the United States at less than fair value. *See Certain Quartz Surface Products of China: Preliminary Determination of Sales at Less Than Fair Value and Postponement of Final Determination*, 84 Fed. Reg. 58540 (Dep't of Commerce Nov. 20, 2018).

29. On July 11, 2019, the United States imposed AD/CVD on QSP manufactured in China (AD/CVD orders for QSP). 84 Fed. Reg. 33053 (July 11, 2019). The combination rate for QSP imported from China was 371.47 percent.

30. With respect to the CVD order for QPS, the "all-others" CVD cash deposit rate was 45.32% for entries between July 5, 2019, to the present. Prior to that time from September 21, 2018, to January 18, 2019, the cash deposit rate was 34.38% for the "all-others" rate and from January 19, 2019, to July 4, 2019, the cash deposit rate was 0%, which was the gap period.

31. With respect to the AD orders for QSP, the "China-wide Entity" AD cash deposit rate was 326.15% for entries beginning July 5, 2019. Prior to the AD order being entered for entries under the "China-wide Entity" from November 20, 2018-January 18, 2019, the cash

deposit rate for entries of QSP was 314.10%, from January 19, 2019, to May 18, 2019, the cash deposit rate was 341.29%, and from May 19, 2019, to July 4, 2019, the cash deposit rate was 0%, which was the gap period.

## VIOLATIONS OF 19 U.S.C. § 1592

### I. Entries with Uni-Tile as the Importer of Record

32. For approximately 372 entries at issue in this case, defendants used Uni-Tile as the importer of record to knowingly enter WCV, QSP, and ceramic tiles from China into U.S. commerce by means of material false statements and omissions to evade payment of AD/CVD and Section 301 duties owed to the United States on such imports.

33. As part of their scheme to deprive the United States of duties owed on WCV, QSP, and ceramic tiles from China, defendants used foreign shell companies to transship goods through Malaysia, but also mislabeled and comingled QSP imports, specifically, with other merchandise not subject to AD/CVD, in entry documents to avoid payment of duties owed on such imports.

34. Defendants' false entries, using Uni-Tile as the importer of record to commit this ongoing fraud scheme, comprise approximately five different groups of entries.

#### A. Uni-Tile Entries of WVC that Falsely Declared Malaysia as the Country of Origin

35. Defendants submitted approximately 195 entries of Chinse manufactured WCV in which Uni-Tile was listed as the importer of record for WCV that defendants transshipped through Malaysia to falsely declare Malaysia as the country of origin for these imports.

36. Defendants' scheme to deprive the United States of duties owed on WCV from China by transshipping the WCV through Malaysia started in approximately November 2019,

right after Commerce issued preliminary determinations in August and October 2019, respectively, on AD and CVD for WCV imports from China.

37. Defendants' decision to declare Malaysia as the country of origin for entries of Chinese-manufactured WCV was done knowingly and voluntarily. Indeed, prior to November 14, 2019, defendants had used Uni-Tile as the importer of record for at least ten entries of WCV, in which defendants declared China as the country of origin instead of Malaysia.

38. Then, for each of the 195 entries of transshipped WCV, defendants listed South Wales Furniture SDN BHD (South Wales) or LLWF Cabinets & Stone SDN BHD (LLWF) as the manufacturer of imports based in Malaysia, which was false.

39. Indeed, CBP conducted a formal investigation (Investigation 7673) under the EAPA into allegations against Uni-Tile, and other companies for allegedly transshipping WCV from China through Malaysia to evade payment of AD/CVD. As part of this investigation, CBP conducted site visits to locations associated with South Wales and LLWF and found no evidence of manufacturing in any location. According to CBP's investigatory findings South Wales and LLWF also used the same web of employees, directors, shareholders, and addresses.

40. Defendants, likewise, knew that South Wales and LLWF were not legitimate companies because their response to records requests about those companies during CBP's EAPA Investigation 7673, provided conflicting and incomplete information to demonstrate that Malaysia was the country of origin for defendants' WCV imports. *Notice of Final Determination as to Evasion*, U.S. Customs and Border Protection (Oct. 6, 2022), https://www.cbp.gov/docum–ent/guidance/eapa-consolidated-case-7673-various-importers-notice-final-determination-evasion.

41. In addition, it is reasonably believed from information CBP learned during its investigation, that Mr. Pan directed Uni-Tile's Chinese-based manufacturers, including Zhaoqing

Marble, not to sell directly to Uni-Tile but to use South Wales and LLWF as shell companies to transship imports to Uni-Tile through Malaysia to evade AD/CVD and Section 301 duties. Later, Mr. Pan further instructed Uni-Tile's Chinese-based manufactures not to ship to Uni-Tile unless the transaction was domestic and cleared customs first with no problems.

42. Defendants made many false statements in each of the 195 entries of WCV that Uni-Tile transshipped through Malaysia, including: (1) failing to identify AD/CVD case numbers (A-570-106-000 and C-570-107-000) on entries, (2) falsely representing that entries were not subject to AD/CVD by filing the entries as type "01" instead of type "03," imports; (3) falsely stating on these entries that the country of origin was Malaysia; and (4) falsely providing the names of Malaysian entities as the manufacturers of the WCV.

43. For these 195 entries, defendants also (1) failed to deposit the required estimated AD/CVD on these entries; (2) omitted on these entries that the WCV were subject to Section 301 duties; and (3) failed to pay those duties. Finally, the merchandise in some, if not all, of the 195 entries was undervalued.[5]

44. The false statements contained in these 195 entries were material because they influenced CBP's determination as to liability for duties and allowed Uni-Tile and Mr. Pan to enter merchandise without paying the full amount of duties owed, which in turn resulted in a loss revenue to the United States.

**B. Uni-Tile Entries of WVC that Omitted Subject AD/CVD Orders**

45. Prior to beginning their transshipment scheme, defendants used Uni-Tile as the importer of record for, at least, ten other entries of WCV that contained false statements used to

[5] The method that CBP used to assess the proper value of merchandise associated with each entry in this case is discussed under Section III.

enter Chinese-manufactured WCV into the United States in a manner aimed to deprive the United States of duties owed on the imports.

46. These ten entries were submitted between September 2, 2019, and October 5, 2019.

47. For nine of these ten entries defendants properly identified and paid deposits on the subject CVD order in place at the relevant time and on Section 301 duties for WCV imports from China but nonetheless paid the wrong amount of duties owed on these WCV imports because defendants knowingly undervalued the merchandise covered by the entry.

48. However, for entry EPS19623196, dated September 2, 2019, Mr. Pan and Uni-Tile also failed to identify and pay deposits on the subject CVD.

49. Defendants' failure to identify and pay deposits on the subject CVD for entry EPS19623196 was done knowingly as indicated by the fact that for the nine other WCV entries that defendants submitted in the same month of time, defendants included the proper information and paid deposits on those WCV entries.

50. Defendants made other false statements in this entry EPS19623196, including: (1) falsely entering merchandise as type "01" instead of type "03" to indicate that AD/CVD orders applied; (2) falsely omitting the applicable CVD case number (C-570-107-000) and applicable cash deposit rate when submitting the entry; and (3) failing to deposit the appropriate CVD cash deposit rate for this entry. In addition, the merchandise in this entry was undervalued.

51. The undervaluation included in all ten of the WCV entries defendants submitted between September and October 2019, along with the additional false statements contained in EPS19623196, were material false statements because they influenced CBP's determination as to

liability for duties and allowed Uni-Tile and Mr. Pan to enter merchandise without paying the full amount of duties owed, which in turn resulted in a loss revenue to the United States.

**C. Uni-Tile Entries of Ceramic Tiles that Falsely Declared Malaysia as Country of Origin**

52. After establishing their scheme to transship WCV through Malaysia to avoid payment of AD/CVD and Section 301 duties, defendants also transshipped ceramic tiles from China through Malaysia to knowingly and falsely declare Malaysia as the country of origin and evade payment of AD/CVD and Section 301 duties on those Chinese-manufactured ceramic tiles.

53. There are three entries of Chinese-manufactured ceramic tiles at issue in this case for which defendants used Uni-Tile as the importer of record to carry out their scheme to evade payment of AD/CVD and Section 301 duties on such imports.

54. The three entries of ceramic tiles that Mr. Pan and Uni-Tile transshipped through Malaysia are dated February 14, 2021 (EPS20185730), January 6, 2020 (EPS19660156), and January 9, 2020 (EPS19660164).

55. For entry EPS20185730, dated February 14, 2021, defendants' decision to import Chinese-made ceramic tiles through Malaysia was done knowingly and voluntarily to avoid payment of Commerce combined AD/CVD orders for ceramic tiles imported from China, which had recently gone into effect on June 1, 2020.

56. Prior to June 1, 2020, and excluding the gap period, the combination rate for ceramic tiles imported from China was 434.46%. After June 1, 2020, the combination rate for ceramic tiles imported from China was 689.5%.

57. Moreover, on October 13 and 16, 2020, a freight forwarder located in China known as "Top & Profit," asked Mr. Pan, via email if he wanted the ceramic tiles included in

entry EPS20185730 to be sent "from China to LA VIA Malaysia." On October 26, 2026, Mr. Pan replied, accepting this offer.

58. On December 21, 2020, Top & Profit sent Mr. Pan an invoice for the transshipment of these Chinese-manufactured ceramic tiles in entry EPS20185730, which included container numbers for the shipment from China to Malaysia and container numbers for the shipment from Malaysia to Oakland, California. Only the latter container numbers, from Malaysia to Oakland, however, were included in entry records for EPS20185730.

59. For entries EPS19660456, dated January 6, 2020, and EPS19660164, dated January 9, 2020, defendants' decision to import Chinese-manufactured ceramic tiles through Malaysia was also done knowingly and voluntarily to avoid payment of Commerce's combination rate of 434.46% for ceramic tiles imported from China, even before its subsequent rate hike.

60. At the time, in January 2020, Mr. Pan and Uni-Tile were already regularly importing Chinese-manufactured WVC through Malaysia; thus, defendants knowingly did the same for their imports of Chinese-manufactured ceramic tiles to make their products more profitable by avoiding payment of subject duties.

61. Mr. Pan and Uni-Tile made the many false statements in each of these entries, including: (1) falsely declaring the country of origin as Malaysia instead of China; (2) falsely entering the merchandise as type "01" instead of type "03" for subject AD/CVD orders; (3) omitting the applicable AD/CVD case numbers and applicable cash deposit rates; and (4) omitting Section 301 duties; and (5) falsely declaring Malaysian manufacturers as the manufacturers of the merchandise. In addition, each of these three entries of ceramic tiles were also undervalued.

62. The false statements contained in these three entries were material because they influenced CBP's determination as to liability for duties and allowed Uni-Tile and Mr. Pan to enter merchandise without paying the full amount of duties owed, which in turn resulted in a loss revenue to the United States.

**D. Uni-Tile Entries that Falsely Mislabeled QSP**

63. To improve profits and evade duties on QSP imports from China, defendants also used Uni-Tile as the importer of record to knowingly enter QSP from China into U.S. commerce via hundreds of entries in which defendants falsely mislabeled QSP as other stone products from China that were not subject to AD/CVD and Section 301 duties for QSP.

64. Defendants knowingly engaged in this scheme of mislabeling and omitting Chinese-manufactured QSP in hundreds of entries as evidenced by detailed container value statements that Uni-Tile, through its owner Mr. Pan, maintained, which show that defendants kept a record of the true content of container numbers imported by defendants from Chinese manufacturers and that the content of these container numbers did not add up to the content of merchandise declared in defendants' entry records.

65. Specifically, CBP was able to trace the container numbers in defendants' container value statements to specific entries in this case. These statements confirm that defendants falsely labeled or deliberately omitted the Chinese-manufactured QSP included in the container numbers associated with each entry.

66. In addition, as described in paragraphs 83, 92-93, 102-103 below, CBP tested products in containers imported by three domestic shell companies later used by defendants to continue their scheme of importing Chinese-manufactured QSP without detection and for each of

these shell companies, the tested products primarily composed QSP but were often declared by the shell companies as artificial stone product or granite.

67. Defendants scheme to enter Chinese-manufactured QSP into U.S. commerce by false statements aimed to avoid its detection is also unsurprising given that a significant amount of merchandise sold at Uni-Tile's locations in California comprise QSP. By evading payment on duties owed on those QSP imports, defendants could increase their profit margins on this merchandise.

68. With respect to Uni-Tile's hundreds of entries of mislabeled and undeclared QSP, Mr. Pan and Uni-Tile made many false statements including: (1) omitting the AD/CVD case number for QSP; (2) indicating type "01" instead of type "03" for these entries; (3) omitting certain entry line items from the entries that would have indicated to CBP that the stone product being entered was more specifically QSP under HTS subheading 6810.99.0010, instead of commingling the quartz surface product under HTS subheadings 6810.99.0080 ("artificial stone product") or 6802.93.0025 (granite); and (4) undervaluing most of the merchandise.

69. The false statements contained in these hundreds of entries were material because they influenced CBP's determination as to liability for duties and allowed Uni-Tile and Mr. Pan to enter merchandise without paying the full amount of duties owed, which in turn resulted in a loss revenue to the United States.

**E. Uni-Tile entries of QSP that Falsely Declared Malaysia as Country of Origin**

70. Using Uni-Tile as the importer of record, Mr. Pan and Uni-Tile also transshipped two entries of QSP from China through Malaysia so they could knowingly and falsely declare Malaysia as the country of origin for these Chinese manufactured QSP and evade payment of AD/CVD and Section 301 duties.

71. The two entries of QSP that defendants transshipped through Malaysia are dated June 16, 2020 (EPS20121248) and September 9, 2020 (EPS20140825).

72. For both entries of transshipped QPS, defendants named LLWF as the manufacturer, which as discussed in paragraphs 38-40 above, they knew was false because LLWF did not exist other than as a shell company to pass through imports from China to enter fraudulently into United States commerce.

73. In addition, defendants knowingly and voluntarily undervalued the products imported under EPS20121248 and EPS20140825 using the same scheme of falsely mislabeling QSP as products other than QSP, such as “artificial stone product,” or “granite,” as described in paragraphs 63 through 35 above.

74. With respect to Uni-Tile’s two entries of QSP that it transshipped through Malaysia, Mr. Pan and Uni-Tile made many false statements in each of these entries, including: (1) falsely declaring Malaysia as the country of origin instead of China; (2) falsely entering the merchandise as type “01” instead of type “03” for AD/CVD orders; (3) omitting the applicable AD/CVD case numbers and applicable cash deposit rates; and (4) omitting Section 301 duties; and (5) falsely declaring Malaysian manufacturers as the manufacturers of the merchandise. These entries were also undervalued.

75. The false statements contained in the two QSP entries transshipped through Malaysia were material because they influenced CBP’s determination as to liability for duties and allowed Uni-Tile and Mr. Pan to enter merchandise without paying the full amount of duties owed, which in turn resulted in a loss revenue to the United States.

## II. Entries with Shell Companies as the Importers of Record

76. For approximately 130 entries, and one attempted entry, at issue, defendants used shell companies as the importers of record to knowingly, or with gross negligence or negligence, enter WCV, QSP, and ceramic tiles from China into U.S. commerce by materially false statements and omissions to evade payment of AD/CVD and Section 301 duties owed to the United States on such imports.

77. The entries and dates in which defendants used these shell companies to falsely import goods into U.S. commerce include: Green Mountains Trading, Inc. (Green Mountains) (3/9/2022- 5/14/2022); Jos Materials, Inc. (Jos Materials) (5/23/2022-8/28/2023); Uncle John Granite and Marble (Uncle John) (12/20/2022-8/28/2023); New Generation Surfaces, Inc. (New Generation) (6/18/2022-11/14/2022); and Santa Flo Commercial Inc. (Santa Flo) (8/9/2022-12/3/2022).

### A. Green Mountains Entries and Attempted Entry of WCV and QSP

78. Defendants knowingly used Green Mountains – a phony shell company registered to a house in a suburban neighborhood in Denver – to disguise their involvement in the transshipment of 19 entries and one attempted entry of WCV through Malaysia and falsely entered this WCV into U.S. commerce in a manner that avoided payment of AD/CVD and other duties on the WCV.

79. These entries were made between March 9, 2022, and May 14, 2022, and listed Green Mountains as the importer of record.

80. Defendants knew that Green Mountains was merely a pass-through entity because for each of Green Mountains' 19 entries (and one attempted entry), defendants controlled the introduction of merchandise associated with these entries and purchased the imported

merchandise for each of these entries from China to be sent to Uni-Tile, ultimately, as the final destination for the imported merchandise.

81. On March 4, 2022, Mr. Pan was copied to communications between Uni-Tile's broker, Mr. Xie, and a Chinese freight forwarder, Pony Warehouse and Logistics Co., LTD in which shipments of goods were directed to be cleared under Green Mountains instead of Uni-Tile.

82. On April 18, 2022, Mr. Pan received an invoice for his review from someone from South Wales – one of the Malaysian shell companies that defendants knowingly used to transship goods from China to the United States. The invoice sent to Mr. Pan included the costs to transship containers from a Chinese manufacturer to Malaysia and then from Malaysia to Uni-Tile in Oakland, using Green Mountains as the importer of record for these containers. These containers were then included with four of Green Mountains' 19 entries in this case: EPS21287600, EPS21296759, EPS2126783, and EPS21287618.

83. CBP also targeted a shipment of merchandise purportedly from the shell company LLWF in Malaysia that Green Mountains attempted to import for defendants under entry EJQ00592613. In that shipment, CBP discovered boxes of kitchen cabinets marked with Uni-Tile's business addresses even though entry papers listed Green Mountains as the importer of record and ultimate consignee. As part of this shipment, CBP also discovered stone slabs with "Made in China" stickers on them. A sample of the stone slabs, which were classified in entry records as "Articles of Glass" under HTS heading 7020.00.6000, was obtained for this attempted entry. The laboratory results from that sample of the stone slabs identified it as primarily composed of quartz. This shipment was exported and it did not enter United States commerce.

84. In connection with the Green Mountains' 19 entries and one attempted entry, defendants made, or caused to be made, many false statements and omissions in entry records including: (1) failing to identify AD/CVD case numbers (A-570-084 and C-570-085-000) on these entries; (2) omitting the applicable cash deposit rates; (3) falsely entering merchandise as type "01" instead of type "03"; (4) falsely stating on entries that the country of origin was Malaysia; and (5) falsely providing the name of a Malaysian entity as the manufacturer of the QSP. Defendants, using Green Mountains, further omitted in the attempted entry of QSP that the QPS were subject to Section 301 duties and failed to pay those duties. Certain of these entries were also knowingly undervalued.

85. The false statements contained in Green Mountains' entries were material because they influenced CBP's determination as to liability for duties and allowed Uni-Tile and Mr. Pan to enter merchandise without paying the full amount of duties owed, which in turn resulted in a loss revenue to the United States.

**B. Jos Materials Entries of QSP**

86. Defendants knowingly used Jos Materials – a phony shell company registered in Colorado, using a stolen identity – to disguise their involvement in the transshipment of 50 entries of Chinese-manufactured QSP through Malaysia and falsely entered this QSP into U.S. commerce in a manner that avoided payment of duties.

87. For each of the 50 entries in which defendants used Jos Materials to import QSP into the United States defendants also comingled and mislabeled QSP, or caused QSP to be comingled or mislabeled, as other stone products to avoid its detection.

88. These 50 entries were made between October 10, 2022, and August 28, 2023, and used Jos Materials as the importer of record.

89. Defendants knew that Jos Materials was merely a pass-through entity because for each of Jos Material's 50 entries, defendants controlled the introduction of merchandise associated with these entries and purchased the imported merchandise for each of these entries from China to be sent to Uni-Tile, ultimately, as the final destination for the imported merchandise.

90. For example, Mr. Xie – defendants' customs broker – was listed as the broker for each of Jos Material's 50 entries, but Jos Materials did not pay Mr. Xie's brokerage fees, which were paid for by accounts related to defendants, instead.

91. Likewise, in January 2023, "Ruby" from a Chinese manufacturer associated with defendants, forwarded Mr. Xie the invoice and packing list used for Jos Materials' entry EPS21365760, via email. Ruby then forwarded the same invoice and packing list to one of Mr. Pan's relatives who then forwarded it to Mr. Pan, via email.

92. Then, in February 2023, CBP conducted a cargo examination of goods imported by Jos Materials under entry EPS21366073 and discovered boxes that listed Uni-Tile, along with Uni-Tile's Hayward California address on labels. Delivery notices from Mr. Xie also confirmed that this merchandise was ordered to be delivered to Uni-Tile at that Hayward address and CBP surveillance confirmed that such merchandise was delivered to Uni-Tile on March 2, 2023, at that same Hayward address.

93. During CBP's February 2023, cargo examination, CBP also discovered stone products imported by Jos Materials, which were described in the relevant entry records as "Artificial Marble Shower Panels" and "Granite Countertops." The only three HTS headings listed in the entry records for entry EPS21366073, moreover, were (1) 6810.99.0080 ("artificial stone" "other"); (2) 6802.93.0025 ("granite"); and (3) 7324.1000.50 (sinks), which were not

subject to AD/CVD. The laboratory results of a sample taken from these stone products, however, revealed these stone products to be a mixture of quartz subject to AD/CVD, and granite and Calcite, which are not subject to AD/CVD. The quartz products were not properly labeled and were omitted from the entry records.

94. Defendants' scheme to use Jos Materials to enter Chinese manufactured QSP through Malaysia by comingling and mislabeling the QSP as other stone products continued into and beyond December 2023. In December 2023, CBP rejected several entries by Jos Materials for failure to declare the subject AD/CVD orders. After receipt of these rejection notices, Mr. Xie resubmitted these entries as type "03" with the AD/CVD case numbers (A-570-084 and C-570-085) appliable to QSP. To date, however, none of these duties have been paid.

95. In connection with the Jos Materials' 50 entries, defendants made, or caused to be made, many false statements and omissions including: (1) omitting of AD/CVD for QSP, including the AD/CVD case number for quartz surface products; (2) indicating "01" instead of "03" for these entries; (3) omitting certain entry line items from the entries that would have indicated to CBP that the stone product being entered was more specifically QSP under HTS subheading 6810.99.0010 (for most entries) instead of commingling the QSP under 6810.99.0080 ("artificial stone product") or 6802.93.0025 (granite); and (4) undervaluing some of the merchandise (to the extent that it applies to a particular entry).

96. The false statements contained in Jos Materials' entries were material because they influenced CBP's determination as to liability for duties and allowed Uni-Tile and Mr. Pan to enter merchandise without paying the full amount of duties owed, which in turn resulted in a loss revenue to the United States.

**C. Uncle John Entries of QSP**

97. Defendants knowingly used Uncle John – a phony shell company registered in California, using a stolen identity belong to someone residing in Texas – to disguise their involvement in the transshipment of 24 entries of Chinese-manufactured QSP through Malaysia and falsely entered this Chinese-manufactured QSP into U.S. commerce in a manner that avoided payment of duties.

98. For each of the 24 entries in which defendants used Uncle John to import QSP into the United States, defendants also comingled and mislabeled QSP, or caused QSP to be comingled or mislabeled, as other stone products to avoid its detection.

99. These 24 entries were made between December 20, 2022, and August 28, 2023, and listed Uncle John as the importer of record.

100. Defendants knew that Uncle John was merely a pass-through entity because, for each of Uncle John's 24 entries, defendants controlled the introduction of merchandise associated with these entries and purchased the imported merchandise for each of these entries from China to be sent to Uni-Tile, ultimately, as the final destination for the imported merchandise.

101. For example, Mr. Xie – defendants' customs broker – was listed as the broker for each of Uncle John's 24 entries, but Uncle John did not pay Mr. Xie's brokerage fees, which were paid for by accounts related to defendants, instead. Mr. Xie also received the contact information for Uncle John from one of Mr. Pan's relatives associated with the Malaysian shell companies to hide defendants' involvement.

102. Then, in February 2023, CBP conducted a cargo examination of the goods imported by Uncle John under entry EPS21262280 and discovered boxes that listed Uni-Tile,

along with Uni-Tile's Hayward California address on labels. Delivery notices from Mr. Xie also confirmed that this merchandise was ordered to be delivered to Uni-Tile at that Hayward address and CBP surveillance confirmed that such merchandise was delivered to Uni-Tile on March 2, 2023, at that same Hayward address.

103. During CBP's February 2023, cargo examination, CBP also discovered stone products imported by Uncle John, which were described in the relevant entry records as "Artificial Marble Shower Panel" and "Granite Countertop." The only two HTS headings listed in the entry records for entry EPS21262280, moreover were (1) 6810.99.0080 (other stone); and (2) 6802.93.0025 (granite), which were not subject to AD/CVD. The laboratory results of a sample taken from these stone products, however, revealed these stone products to be a mixture of quartz subject to AD/CVD, and granite and Calcite, which are not subject to AD/CVD. The quartz products were not properly labeled and were omitted from entry records.

104. Defendants' scheme to use Uncle John to enter Chinese manufactured QSP through Malaysia by comingling and mislabeling the QSP as other stone products continued into and beyond December 2023. In December 2023, CBP rejected several entries by Uncle John for failure to declare the subject AD/CVD orders. After receipt of these rejection notices, Mr. Xie resubmitted these entries as type "03" with the AD/CVD case numbers (A-570-084 and C-570-085) appliable to QSP.

105. In connection with the Uncle John's 24 entries, defendants made, or caused to be made, false statements and omissions including: (1) omitting of AD/CVD for QSP, including the AD/CVD case number for quartz surface products; (2) indicating "01" instead of "03" for these entries; (3) omitting certain entry line items from the entries that would have indicated to CBP that the stone product being entered was more specifically QSP under HTS subheading

6810.99.0010 (for most entries) instead of commingling the QSP under 6810.99.0080 ("artificial stone product") or 6802.93.0025 (granite); and (4) undervaluing some of the merchandise (to the extent that it applies to a particular entry).

106. The false statements contained in Uncle John's entries were material because they influenced CBP's determination as to liability for duties and allowed Uni-Tile and Mr. Pan to enter merchandise without paying the full amount of duties owed, which in turn resulted in a loss revenue to the United States.

**D. New Generation Entries of QSP**

107. Defendants knowingly used New Generation – a shell company registered in Colorado – to disguise their involvement in the transshipment of 19 entries of Chinese-manufactured QSP through Malaysia and falsely entered this QSP into U.S. commerce in a manner that avoided payment of duties.

108. For each of these 19 entries in which defendants used New Generation to import QSP into the United States, defendants also comingled and mislabeled, or caused QSP to be comingled or mislabeled, as other stone products to avoid its detection.

109. These 19 entries were made between June 8, 2022, and November 14, 2022, and used New Generation as the importer of record.

110. Defendants knew that New Generation was merely a pass-through entity because for each of New Generation's 19 entries, defendants controlled the introduction of merchandise associated with these entries and purchased the imported merchandise for each of these entries from China to be sent to Uni-Tile, ultimately, as the final destination for the imported merchandise.

111. For example, Mr. Xie – defendants' customs broker – was listed as the broker for each of New Generations 19 entries, but New Generation did not pay Mr. Xie's brokerage fees, which were paid for by accounts related to Defendants, instead. Mr. Xie, also, received the contact information and all documents for New Generations from "Ruby" from a Chinese manufacturer tied to Uni-Tile and delivery notices from Mr. Xie confirmed that the merchandise imported by New Generations was ordered to be delivered directly to Uni-Tile at its Hayward address, not to New Generations.

112. In addition, in an email dated June 6, 2022, someone from a Chinese manufacture tied to Uni-Tile sent Mr. Xie, Mr. Pan, and Mr. Poon an invoice and packing list for the two containers that would be included in EPS2137480: 1) HLXU256200 and 2) UACU43557152. Mr. Xie then filed the entry on behalf of New Generation, not Uni-Tile, on June 11, 2022, with two line items: 1) 6810.99.0080 (Artificial Stone Other) and 2) 6802.93.0025 (Granite). The total value associated with the entry was $35,502.

113. These same containers, however, were also included in Uni-Tile's detailed container value statements, from which CBP was able to identify a more accurate breakdown of the content of the two containers shipped in the New Generation's entry EPS2137480. Based on these container statements from Uni-Tile, CBP determined that the containers included with that entry actually contained: 1) 6810.99.0080 (Artificial Stone Other); 2) 6802.93.0025 (Granite); 3) 6810.99.0010 (Quartz Surface Products); 4) 6802.99.0060 (Worked Monumental Stone); and 5) 7009.92.5010 (Glass Mirror). The total value associated with this corrected entry was $51,366.00.

114. In connection with the New Generation's 19 entries, defendants made, or caused to be made, false statements and omissions including: (1) omitting of AD/CVD for QSP,

including the AD/CVD case number for quartz surface products; (2) indicating "01" instead of "03" for these entries; (3) omitting certain entry line items from the entries that would have indicated to CBP that the stone product being entered was more specifically QSP under HTS subheading 6810.99.0010 (for most entries) instead of commingling the QSP under 6810.99.0080 ("artificial stone product") or 6802.93.0025 (granite); and (4) undervaluing some of the merchandise (to the extent that it applies to a particular entry).

115. The false statements contained in New Generation's entries were material because they influenced CBP's determination as to liability for duties and allowed Uni-Tile and Mr. Pan to enter merchandise without paying the full amount of duties owed, which in turn resulted in a loss revenue to the United States.

**E. Santa Flo Entries of QSP**

116. Defendants knowingly used Santa Flo – a shell company registered in Colorado – to disguise their involvement in the transshipment of 18 entries of QSP through Malaysia and falsely entered this QSP into U.S. commerce in a manner that avoided payment of duties.

117. For each of these 18 entries in which defendants used Santa Flo to import QSP into the United States, defendants also comingled and mislabeled, or caused QSP to be comingled or mislabeled, as other stone products to avoid its detection.

118. These 18 entries were made between August 9, 2022, and December 3, 2022, and used Santa Flo as the importer of record.

119. Defendants knew that Santa Flo was merely a pass-through entity because for each of Santa Flo's 18 entries, defendants controlled the introduction of merchandise associated with these entries and purchased the imported merchandise for each of these entries from China to be sent to Uni-Tile, ultimately, as the final destination for the imported merchandise.

120. For example, Mr. Xie – defendants' customs broker – was listed as the broker for each of Santa Flo's 18 entries, but Santa Flo did not pay Mr. Xie's brokerage fees; they were paid for by accounts related to defendants, instead. Mr. Xie, also, received the contact information and all documents for Santa Flo from "Ruby" from a Chinese manufacturer tied to Uni-Tile and delivery notices from Mr. Xie confirmed that the merchandise imported by Santa Flo was ordered to be delivered directly to Uni-Tile at its Hayward address, not to Santa Flo.

121. In addition, in an email dated July 12, 2022, someone from a Chinese manufacturer tied to Uni-Tile sent Mr. Xie, Mr. Pan, and Mr. Pan's relative associated with the Malaysian shell companies, an invoice and packing list for the three containers that would be included in EPS-21326168: 1) BEAU2010216; 2) TGHU1253799; and 3) UACU4102625. Xie filed the entry with two line items: 1) 6810.99.0080 (Artificial Stone Other) and 2) 6802.93.0025 (Granite). The total value associated with the entry was $38,730.00.

122. These same containers, however, were also included in Uni-Tile's detailed container value statements, from which CBP was able to identify a more accurate breakdown of the content of the three containers shipped in the Santa Flo entry EPS21326168. Based on these container statements from Uni-Tile, CBP determined that the entry actually contained: 1) 6810.99.0080 (Artificial Stone Other); 2) 6810.99.0010 (QSP); and 3) 3506.99.0000 (Adhesives). The total value associated with this modified entry was $91,213.00.

123. In connection with the Santa Flo's 18 entries, CBP determined that defendants made, or caused to be made, false statements and omissions including: (1) omitting of AD/CVD for QSP, including the AD/CVD case number for quartz surface products; (2) indicating "01" instead of "03" for these entries; (3) omitting certain entry line items from the entries that would have indicated to CBP that the stone product being entered was more specifically QSP under

HTS subheading 6810.99.0010 (for most entries) instead of commingling the QSP under 6810.99.0080 (“artificial stone product”) or 6802.93.0025 (granite); and (4) undervaluing some of the merchandise (to the extent that it applies to a particular entry).

124. The false statements contained in Santa Flo’s entries were material because they influenced CBP’s determination as to liability for duties and allowed Uni-Tile and Mr. Pan to enter merchandise without paying the full amount of duties owed, which in turn resulted in a loss revenue to the United States.

**III. Valuation of Entries**

125. As to all entries at issue in this case, defendants knowingly undervalued the merchandise associated with each entry, meaning that defendants falsely stated the value of merchandise associated with each entry, or caused the value of merchandise to be falsely stated in each entry in this case.

126. To determine that the merchandise in each entry at issue in this case was undervalued, CBP employed several appraisement methods, as described under 19 U.S.C. § 1401a. The primary method of appraisement used by CBP was the “transaction value” of merchandise, which CBP obtained from detailed container value statements and invoices and business records obtained from Uni-Tile.

127. For example, the detailed container value statements that CBP obtained from Uni-Tile showed the breakdown of merchandise in container numbers and these container numbers were then traced to specific entries at issue in this case. In many cases, the container value statements also included the price that Uni-Tile actually paid for merchandise in a container number. Where no price was included, CBP derived the value of the merchandise using various other methods, including using other business records that it obtained from Uni-Tile. In nearly

all cases, as to any container number, the value of merchandise included in Uni-Tile's container value statements was more than the value of merchandise reflected for that same container number in a specific entry at issue in this case.

128. In other words, the container value statements showed the alleged payments that Uni-Tile actually paid Chinese manufacturers for the goods defendants entered or caused to be entered into U.S. commerce, which was more than the price of goods reported in entry records for that same merchandise.

**ADMINISTRATIVE PROCEEDINGS**

129. On December 18, 2025, CBP issued a pre-penalty notice to Uni-Tile and Mr. Pan.

130. In the pre-penalty notice, CBP proposed a monetary penalty in the amount of $222,537,664.95 (the domestic value of the merchandise) alleging a culpability level of fraud. CBP also alleged the culpability levels of negligence and gross negligence in the alternative.

131. On February 25, 2026, CBP issued to Uni-Tile and Mr. Pan a penalty notice in the amount of $222,537,664.95 and demand for duties in the amount of $68,292.260.09.

132. All administrative notices and demands for payment issued by CBP were processed in accordance with applicable laws and procedures.

133. Mr. Pan and Uni-Tile has not paid any part of the duties and penalty the United States seeks in this action.

134. On February 25, 2026, CBP sent a demand for duties to Southwest Marine and General Insurance (Southwest Marine) and American Alternative Insurance (American Alternative), as sureties for Uni-Tile and Uncle John.

135. On April 22, 2026, American Alternative responded by paying a total of $320,000 for the following bond periods: $50,000 covering bond 15C000J2K for the period 4/30/2018-

4/29/2019; $70,000 covering bond 19C000EQ9 for period 3/29/2019-3/28/2020; and $200,000 covering bond 19C000EQ9 for period 7/8/2021- 7/7/2022. These payments related to the entries in which Uni-Tile was the importer of record and exhausts the bond amounts for those entries.

136. With respect to bond 22C001DYS for Jos Materials, Southwest Marine sent a check on February 6, 2026, for supplemental duty bills for $50,000, which exhausts that bond.

**COUNT I**

137. The allegations contained in paragraphs 1 through 136 above are restated and incorporated by reference.

138. The material false statements, acts, or omissions described above were committed, submitted, made, or caused by Mr. Pan and Uni-Tile knowingly, voluntarily, and intentionally, and thus were fraudulent violations of 19 U.S.C. § 1592(a).

139. Pursuant to 19 U.S.C. § 1592(d), as a result of the fraudulent violations of 19 U.S.C. § 1592(a) described above, Mr. Pan and Uni-Tile are liable, jointly and severally, for $67,922,260.09, representing the actual loss of revenue of lawful duties and fees of which the United States has been deprived, plus pre-judgment and post-judgment interest.

140. As a result of the fraudulent violations of 19 U.S.C. § 1592(a) described above, pursuant to 19 U.S.C. § 1592(c)(1), Mr. Pan and Uni-Tile are liable, jointly and severally, for a penalty for fraud in the amount of $222,537,664.95, which is equal to the domestic value of the merchandise for level of fraud culpability, plus post-judgment interest.

**COUNT II**

141. The allegations contained in paragraphs 1 through 140 above are restated and incorporated by reference.

142. If the Court determines that the material false statements, acts, or omissions

described in paragraphs 1 through 136 above were not fraudulent violations, then they were grossly negligent violations of 19 U.S.C. § 1592(a) because Mr. Pan and Uni-Tile committed them with reckless or wanton disregard for the relevant facts and with indifference to or disregard for its obligations.

143. As a result of the grossly negligent violations of 19 U.S.C. § 1592(a), described above, pursuant to 19 U.S.C. § 1592(d), Mr. Pan and Uni-Tile are liable, jointly and severally, for $25,357,830.22, representing the actual loss of revenue of lawful duties and fees of which the United States has been deprived under a gross negligence claim, plus pre-judgment and post-judgment interest.[6]

144. As a result of the grossly negligent violations of 19 U.S.C. § 1592(a) described above, pursuant to 19 U.S.C. § 1592(c)(2), Mr. Pan and Uni-Tile are liable, jointly and severally, for a penalty for gross negligence in the amount of approximately for $98,385,904.06, which is equal to the domestic value of the relevant merchandise, plus post-judgment interest.[7]

**COUNT III**

145. The allegations contained in paragraphs 1 through 144 above are restated and incorporated by reference.

---

[6] The total unlawful duties and fees of which the United States has been deprived pursuant to grossly negligent or negligent violations of 19 U.S.C. § 1592(a) differs from liability for these violations arising under fraud. This is due to certain entries being precluded by the statute of limitations for gross negligence and negligence, which runs for five years after the entries were made. *See* 19 U.S.C. § 1621. The statute of limitations on entries arising out of fraud, however, runs for five years after the date of discovery of the fraud. *Id.*

[7] A penalty related to violations arising out of gross negligence must not exceed the domestic value of the merchandise or four times "the lawful duty, taxes, and fees of which the United States is or may be deprived." 19 U.S.C. § 1592(c)(2). The domestic value of entries that give rise to a gross negligence claim is $98,385,904.06, which is less than four times the total loss of revenue (i.e., actual loss of revenue plus potential loss of revenue) at the level of gross negligence, (or $48,440,304.11 multiplied by four which is $193,761,216.44).

146. If the Court determines that the material false statements, acts, or omissions described in paragraphs 1 through 136 above that were committed, submitted, made, or caused by Mr. Pan and Uni-Tile were not the result of gross negligence, then they were negligent violations of 19 U.S.C. § 1592(a) because Mr. Pan and Uni-Tile failed to exercise reasonable care and competence to ensure that statements made and information provided in connection with the subject merchandise were complete and accurate.

147. As a result of the negligent violations of 19 U.S.C. § 1592(a) described, pursuant to 19 U.S.C. § 1592(d), Mr. Pan and Uni-Tile are liable, jointly and severally, for $25,357,830.22 of lawful duties and fees of which the United States has been deprived, plus pre-judgment and post-judgment interest.

148. As a result of the negligent violations of 19 U.S.C. § 1592(a) described above, pursuant to 19 U.S.C. § 1592(c)(3), Mr. Pan and Uni-Tile are liable, jointly and severally, for a penalty for negligence in the amount of $96,880,608.23, which is less than the domestic value of the merchandise at the level of negligence and is equal to two times the total loss of revenue (i.e., actual loss of revenue plus potential loss of revenue) at the level of negligence, plus post-judgment interest.[8]

**COUNT IV**

149. The allegations contained in paragraphs 1 through 148 above are restated and incorporated by reference.

---

[8] A penalty related to violations arising out of negligence, only, must not exceed the domestic value of the merchandise or two times "the lawful duty, taxes, and fees of which the United States is or may be deprived." 19 U.S.C. § 1592(c)(3). Two times the total loss of revenue (i.e., actual loss of revenue plus potential loss of revenue) at the negligence level is $96,880,608.23, which is less than the domestic value of entries that give rise to a negligence claim, or $98,385,904.06.

150. In the alternative, at all relevant times, the material false statements, acts, or omissions described in paragraphs 1 through 136 above by shell companies were committed, submitted, made, or caused by the primary importer in violation of 19 U.S.C. § 1592(a) for which the defendants also knowingly aided and abetted.

151. Defendants aided and abetted the shell companies violate 19 U.S.C. § 1592(a) by knowingly, voluntarily, and intentionally, facilitating, preparing, or hiding the fraudulent statements or data contained in the shell companies' entry records or by doing the same with reckless or wanton disregard for the relevant facts and with indifference to or disregard for the primary importer's obligations.

152. As a result of knowingly aiding and abetting the shell companies' violations of 19 U.S.C. § 1592(a), described above, pursuant to 19 U.S.C. § 1592(d), defendants are liable, jointly and severally, for $67,922,260.09, representing the actual loss of revenue, of lawful duties and fees of which the United States has been deprived, plus pre-judgment and post-judgment interest.

153. As a result of knowingly assisting and abetting shell companies to violate 19 U.S.C. § 1592(a) described above, pursuant to 19 U.S.C. § 1592(c)(1), Mr. Pan and Uni-Tile are liable, jointly and severally, for a penalty for fraud in the amount of approximately for $222,537,664.95, which represents the domestic value of the merchandise, and is an amount less than four times the total loss of revenue (i.e., actual loss of revenue plus potential loss of revenue), plus post-judgment interest.

## PRAYER FOR RELIEF

**WHEREFORE,** the United States respectfully requests the Court enter judgment for the United States against defendants Mr. Pan and Uni-Tile, jointly and severally, for:

(1) A penalty for fraudulent violations of 19 U.S.C. § 1592(a) in the amount of $222,537,664.95, plus post-judgment interest.

(2) Unpaid duties and fees in the amount of $67,922,260.09, representing the actual loss of revenue, plus pre-judgment and post-judgment interest.

(3) Costs permitted by law.

(4) Such other and further relief as the Court deems appropriate.

## JURY DEMAND

The United States demands a trial by jury of all issues so triable pursuant to Rule 38 of the Rules of the U.S. Court of International Trade.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

By: /s/ Anna D. Walker
ANNA D. WALKER
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Tel: (202) 451-7729

*Attorneys for the United States*

September 28, 2026